UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:03CV-51-R

ALEXANDER COLEMAN                                                                PLAINTIFF

v.

RUST-OLEUM CORPORATION, RPM INTERNATIONAL, INC.,
U.S. CAN CORPORATION, AND ALL UNKNOWN MANUFACTURERS
OF THE PRODUCTS INGREDIENTS                                          DEFENDANTS

**MEMORANDUM OPINION**

This case comes before the Court on Defendants, U.S. Can Corporation ("U.S. Can") and Rust-Oleum Corporation ("Rust-Oleum"), Motions for Summary Judgment, Dockets #30 and #32, respectively. The Plaintiff, Cpl. Alexander Coleman ("Coleman") responded (Docket #42), and the Defendants Rust-Oleum and U.S. Can replied to the response in Dockets #44 and #50, respectively. In addition, Defendant U.S. Can filed a supplemental response after their initial reply (Docket #61). This matter is now ripe for adjudication. For the following reasons, the Defendants' Motions for Summary Judgment are **GRANTED in part and DENIED in part.**

**BACKGROUND**

On May 7, 2002, then Spc. Alexander Coleman (now Corporal) was working at his Company Headquarters at Fort Campbell, Kentucky, repainting metal aiming poles with specialists Jason Baker ("Baker") and Phillip Browning ("Browning"). After the first paint can that Coleman was using ran out, Coleman went inside Company Headquarters to retrieve a new can of Rust-Oleum spray paint. Coleman returned outside to where he was spray painting in the presence of Baker and Browning, and followed the directions on the can to "[s]hake can vigorously for one minute after mixing balls begin to rattle, shake often during use." After

shaking the can for approximately two (2) to five (5) minutes, Coleman began to try to spray the can with little to no avail, as he could not hear the mixing balls dislodge and/or rattle in the can and the can would merely spit paint.  At that time Coleman bent over and struck the can of Rust-Oleum spray paint on a wooden bench at least two, but no more than three times.  On the second or third tap the can exploded, and part of the can hit Coleman in his head at his right temporal area and exited behind his right ear.

Baker was present during this sequence of events and witnessed the explosion, but at the time the can exploded Browning was behind two metal doors that lead into the Company Headquarters.  However, Browning did hear Coleman tapping the can, and also heard the explosion that injured Coleman.  Browning called the ambulance that took Coleman to the hospital for his injuries.  Browning found the bottom of the Rust-Oleum near the wooden bench and the rest of the can about 23-35 meters from the point of the explosion.

Soon after the accident Coleman developed an aneurism on the right side of his head in the temporal area, and he was eventually sent to Walter Reed Army Medical Center in Washington, D.C. to receive treatment from Chief Neurosurgeon Col. James M. Ecklund, M.D. ("Ecklund").  Coleman was treated at Walter Reed on August 27, 2002, with Ecklund performing a resection on the right superficial temporal artery of Coleman.  This treatment continued through December 2002 when Ecklund referred Coleman to the Pain Management Clinic at Walter Reed. Coleman stayed at the Pain Management Clinic until his deployment for the Iraq War in March 2003, when his unit was assigned to Kuwait in preparation of the invasion of Iraq.

While in Kuwait, Coleman could not wear his kevlar helmet, so he was not sent to Iraq and had to stay behind in Kuwait on light duty.  Coleman returned from Kuwait in September

2003 and was assigned permanently to Fort Campbell, Kentucky, while simultaneously receiving treatment at the Pain Management Clinic at Walter Reed.  In April 2004, Coleman was transferred to Fort Carson, Colorado, where he continued to be treated for his injury.  In May 2005, Coleman returned to the Pain Management Clinic at Walter Reed right before he went before the Medical Review Board of the U.S. Army in the Summer 2005.  The Review Board medically discharged Coleman from the Army on July 4, 2005, because he was not fit for worldwide duty.  Presently, Coleman receives treatment from Dr. Timothy Sandell in Colorado for his headaches and sleeping problems.

   The complaint brought by Coleman against Rust-Oleum and U.S. Can alleges strict liability and negligence claims against the Defendants, and its response Coleman has brought a claim for breach of an implied warranty of both merchantability and fitness.  In its Motion for Summary Judgment, Rust-Oleum counters that the expert testimony submitted by Coleman does not meet the minium requirement to sustain a strict liability case for products liability under the Kentucky Products Liability Act.  Further, Rust-Oleum argues that Coleman has not established liability for Rust-Oleum under K.R.S. 411.340.  In U.S. Can's Motion for Summary Judgment and replies it asserts that Coleman cannot prove his claims for negligence and strict liability.  In addition, U.S. Can argues that Coleman has not met his burden to respond properly its Motion for Summary Judgment under FRCP 56, that Coleman has failed to meet the necessary presumption to sustain a case under the Kentucky Products Liability Act, and that in its response Coleman improperly raised a new cause of action.  Lastly, U.S. Can and Rust-Oleum claim contribution and indemnification against one another, should either defendant be found solely liable, respectively.

**STANDARD**

Summary judgment is available under Fed. R. Civ. P. 56(c) if the moving party can establish that the "pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The plaintiff must present more than a mere scintilla of evidence. To support this position, he must present evidence on which the trier of fact could find for the plaintiff. *See id.* (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996). Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tomkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (1991)." *Gafford v. General Electric*

*Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## DISCUSSION

1. Plaintiff's strict liability and negligence claims concerning defective design and manufacture.

In Kentucky, all claims made against a manufacturer for products liability are covered by KRS §411.300- 411.340, the Kentucky Products Liability Act. KRS §411.340, entitled, "When wholesaler, distributor, or retailer to be held liable," states:

> In any product liability action, if the manufacturer is identified and subject to the jurisdiction of the court, a wholesaler, distributor, or retailer who distributes or sells a product, *upon his showing by a preponderance of the evidence that said product was sold by him in its original manufactured condition or package, or in the same condition such product was in when received by said wholesaler, distributor or retailer,* shall not be liable to the plaintiff for damages arising solely from the distribution or sale of such product, unless such wholesaler, distributor or retailer, breached an express warranty or knew or should have known at the time of distribution or sale of such product that the product was in a defective condition, unreasonably dangerous to the user or consumer (emphasis added).

The Plaintiff must overcome this burden to sustain a claim against a manufacturer for a design or manufacturing defect. Originally, Coleman attempted to rely on the expert testimony of Boyce McCain (McCain) to support these claims. Defendants have attacked McCain's qualifications and his opinions. McCain originally filed a report setting forth several alleged defects in design and manufacture of the can. In his deposition, which the Court read in its entirety, McCain essentially retreated from those criticisms. In the end, he agreed with the opinion on causation offered by US Can's expert, Mr. Ralph Daehn, PE.

McCain agreed that the can was manufactured and designed in accordance with

industry standards. He had no knowledge of how any other manufacturer designed or manufactured similar cans. He had never visited a can manufacturing facility or designed a can. He also agreed that Rust-Oleum met industry standards, and had no criticism of Rust-Oleum in this case.

In addition, McCain also stated the can met the state of the art in design and manufacture. He did not opine that the can was defective in design or manufacture. He seemed to say that from the design and manufacture standpoint, the can was not unreasonably dangerous. In the end, McCain agreed with Mr. Daehn that the most probable explanation was that the can failed was because of low cycle bending fatigue caused by repeated impact on the bottom of the can.

McCain limited his criticism to failure analysis. McCain is an engineer with considerable experience in failure analysis of metals and plastics. He appears to be qualified to offer expert opinion on failure analysis. He may not be qualified to offer an opinion on design and manufacturing defects. However, he offered no criticism of design or manufacturing process or claimed that there was a design or manufacturing defect. Further, the point as to his qualifications as an expert is most likely moot as Coleman did not list McCain as a witness on his witness designation.

Plaintiff seemingly has abandoned the opinion of McCain and instead argues res ipsa loquitur. Despite this change in argument, the Court finds that plaintiff has not met his burden of proving a design or manufacturing defect. This issue of failure to warn as it may be encompassed in design and manufacturing shall be dealt with later in the opinion.

The product, from a technical and performance standpoint, met industry and state of

the art standards in design and manufacture. The most likely cause of the explosion was low cycle bending fatigue caused by impacts on the bottom of the can. The number of impacts is in question. The circumstantial evidence is not so strong as to overcome a presumption created by Kentucky Product Liability of KRS §§411.310(2) and 411.340. Regardless of the presumption, has not met his burden.

The standard for a product to be defective under strict liability is much less than the standard for negligence. Excluding a claim for inadequate warning, Coleman's claims for strict liability and negligence based on defective design or manufacture are dismissed.

2. Inadequate warning.

As mentioned supra, U.S. Can employed Ralph Daehn, PE as an expert. He is qualified to give expert opinion on the design and manufacture of the can. He opined in part that:

1. "The failure of the can was the direct result of repeated forceful striking of the can against a solid surface, resulting in the rupture of the body metal in the neck area just above the bottom and seam, by a mechanism termed low-cycle fatigue."

2. "The failure of this can was related to the tendency of the pigment to settle out and capture the ball, requiring an extraordinary effort to dislodge the ball. Rust-Oleum should have anticipated extraordinary efforts and may have attempted to dislodge the ball and should have placed a warning on the can cautioning the user from striking the can against a hard surface or otherwise abusing the can."

Rust-Oleum has filed a motion to exclude the opinions of Daehn concerning the warning. Rust-Oleum argues that Daehn is not qualified as an expert to provide a Daubert

analysis.

Daehn has been a licensed engineer since 1962. He has provided expert testimony sixteen (16) times on the issues of a technical nature, including warnings. In addition, Daehn's curriculum vitae and affidavit indicate that he has the education, professional and technical experience in designing and implementing warnings. Further, Daehn's experience as an engineer further supports his credibility in addressing the issue of warnings. The Court finds that Daehn qualifies as an expert by training and experience to give his opinion on warnings.

U.S. Can manufactured the can based on the specification provided by Rust-Oleum. Rust-Oleum provided the wording for all labeling and design of the can including any warnings. Rust-Oleum added the paint, agitation balls and pressurized the can. The same type of can with the same warning was used for paints of different pigmentation.

The only warning provided by Rust-Oleum was:

"Shake can vigorously for one minute after mixing balls begin to rattle, shake often during use." There was no warning concerning striking the can or any problem associated with paint of high pigment or any problem associated with the mixing balls if they did not rattle.

Courts in Kentucky have held that the adequacy of a warning is not only a factor to be considered in determining whether the product was unreasonably dangerous, but have also held that failure to provide an adequate warning can mean a product is unreasonably unsafe. Post v. Am. Cleaning Equipment Corp., 437 S.W.2d 516, 520 (Ky. 1968); Montgomery Elevator Company v. McCullough, 676 S.W.2d 776, 781 (Ky. 1984). In the instant matter,

U.S. Can did not design the warning nor did it place the paint in the cans. All claims for inadequate warning are the responsibility of Rust-Oleum.

Based on a review of records now before the Court. Therefore, the Court finds there is a jury issue concerning adequacy of warning. This issue can be evaluated better at the close of all proof.

### 3. Breach of implied warranty

In his response to U.S. Can's motion fo summary judgment, Coleman asserts a claim for breach of implied warranty against the defendants. In its reply, U.S. Can argues that Coleman has improperly raised this claim and that the liberal pleading standards do not apply when a plaintiff responds to a motion for summary judgment.

The Sixth Circuit Court of Appeals, in *Tucker v. Union of Neddletrades, Industrial and Textile Employees*, held that the a plaintiff could not raise a new claim in his/her response to a summary judgment motion because it would subject the moving party to unfair surprise and the plaintiff had already had an opportunity to amend his/her complaint under FRCP 15 earlier in the litigation. *Tucker v. Union of Neddletrades, Industrial and Textile Employees*, 407 F.3d 784, 788-789 (6th Cir. 2005) (citing *Guiffre v. Local Lodge No. 1124*, *No. 90-3540*, 1991 WL 135576, at *5 (6th Cir. July 24, 1991).

In the instant matter the initial complaint submitted by Coleman contained claims against the defendants for negligence and strict liability. In his response Coleman improperly raised a claim against the defendants for breach of implied warranty of fitness and merchantability. This claim should have been brought with this initial complaint, and/or the Plaintiff should have amended his complaint in order to make this claim, which cannot be raised in his response to

U.S. Can's motion for summary judgment. Therefore, the Court finds that Coleman may not assert a cause of action against the defendants in his response to summary judgment.

4.  Cross claim of Rust-Oleum

The only claim to survive summary judgment is a claim of adequacy of warning. U.S. Can did not design the wording of the warning. The warning was written by Rust-Oleum. Therefore, all claims against U.S. Can are dismissed. Consequently, there are no issues of indemnity and contribution.

CONCLUSION

For the foregoing reasons, Defendant Rust-Oleum's Motion for Summary Judgment is DENIED, and Defendant U.S.Can's Motion for Summary Judgment is GRANTED.

An appropriate order shall issue.

December 14, 2005

Thomas B. Russell, Judge
United States District Court